UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
DIANE T. CLARKE, ILANA KOPMAR, ISAAC
ALTMAN and DAVID ROSENFELD,

                                   Plaintiffs,

          -against-

THE ASSOCIATION OF LEGAL AID ATTORNEYS,
AMALGAMATED LOCAL UNION 2325 OF THE
INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA (UAW), AFL-CIO, LISA
OHTA, BRET J. TAYLOR, JEREMY BUNYANER,
EMILY C. EATON, MARTYNA KAZNOWSKI,
GILLIAN R. KRESS, IOANA CALIN, and PUJA PAUL,

                                Defendants.
------------------------------------------------------------------------X

Case No: 2:23-cv-08869
(NJC) (ARL)


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISSOLVE THE TEMPORARY RESTRAINING ORDER


Levy Ratner, P.C.
80 Eighth Avenue, 8th Floor
New York, NY 10011-5126
(212) 627-8100
(212) 627-8182 (fax)


On the Brief:   Aleksandr L. Felstiner
                   Allyson L. Belovin

## <u>TABLE OF CONTENTS</u>

SUMMARY ............................................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 1

ARGUMENT ........................................................................................................... 5

I.   THE INJUNCTION DIRECTLY INFRINGES ON THE CONSTITUTIONAL
     SPEECH RIGHTS OF DEFENDANT UNION AND ITS MEMBERS ........................... 5

     A.   THE FIRST AMENDMENT GUARANTEES DEFENDANT UNION AND
          ITS MEMBERS THE RIGHT TO FREE EXPRESSION ..................................... 5

     B.   THE PROPOSED VOTE IS A QUINTESSENTIAL EXAMPLE OF
          PROTECTED EXPRESSION ................................................................. 5

     C.   THE TRO WAS INVALID PRIOR RESTRAINT ............................................. 6

     D.   THE TRO IS A CONTENT-BASED RESTRICTION ON SPEECH AND
          CANNOT SURVIVE STRICT SCRUTINY ........................................... 6

II.  DEFENDANT UNION FULFILLED ITS DUTY OF FAIR REPRESENTATION IN
     BRINGING THE RESOLUTION TO A VOTE ................................................. 8

     A.   THE UNION FOLLOWED ITS BYLAWS AND AFFORDED ALL
          MEMBERS EQUAL OPPORTUNITY TO PARTICIPATE ................................. 8

     B.   THE UNION DID NOT ACT ARBITRARILY, DISCRIMINATORILY, OR
          IN BAD FAITH ....................................................................... 9

     C.   PLAINTIFFS CANNOT MAKE OUT A DFR CLAIM BECAUSE THEY
          CANNOT SHOW IMMINENT, COGNIZABLE INJURY ................................ 10

III. PLAINTIFFS' BREACH-OF-CONTRACT CLAIM IS FORECLOSED UNDER
     NEW YORK GENERAL ASSOCIATIONS LAW, AND PLAINTIFFS CANNOT
     SATISFY THE ELEMENTS OF A CONTRACT BREACH ......................................... 11

     A.   PLAINTIFF HAS NOT PLEADED (AND CANNOT SHOW)
          AUTHORIZATION OR RATIFICATION BY EVERY MEMBER .................. 11

     B.   PLAINTIFFS DO NOT IDENTIFY ANY ENFORCEABLE PROMISE OR
          LOSS ................................................................................. 12

IV.    THE VOTE WOULD CREATE NO ACTUAL OR APPARENT CONFLICT OF INTEREST...................................................................................................... 13

V.    NONE OF THE TRADITIONAL EQUITABLE FACTORS SUPPORT THE TRO...... 16

    A.    PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS ................. 16

    B.    THE ALLEGED HARM DEPENDS ON SPECULATION ABOUT THE REACTION OF UNRELATED THIRD PARTIES............................................. 16

    C.    THE SPEECH RIGHTS OF THE UNION AND ITS MEMBERS FAR OUTWEIGH PLAINTIFFS' DESIRE TO AVOID ASSOCIATION WITH THE RESOLUTION............................................................................................. 18

    D.    THE PUBLIC INTEREST FAVORS FREE EXPRESSION, AND THERE IS NO PUBLIC INTEREST IN PROTECTING PLAINTIFFS FROM THE DEMOCRATIC DECISIONS OF THEIR OWN UNION .................................. 18

CONCLUSION............................................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aguinaga v. Food and Commercial Workers*,
993 F.2d 1463 (10th Cir. 1993) ............................................................................... 9, 10

*Bidnick v. Grand Lodge of Free & Accepted Masons of State of New York*,
159 A.D.3d 787 (2d Dept. 2018) ..................................................................................... 11

*Boos v. Barry*,
485 U.S. 312 (1988) ............................................................................................................ 7

*Ford Motor Co. v. Huffman*,
345 U.S. 330 (1953) ............................................................................................................ 9

*Kenford Co. v. Erie Cnty.*,
67 N.Y.2d 257 (1986) ....................................................................................................... 13

*JSG Trading Corp. v. Tray–Wrap, Inc.*,
917 F.2d 75 (2d Cir. 1990) .............................................................................................. 17

*Lahendro v. New York State United Tchrs. Ass'n*,
88 A.D.3d 1142, (3d Dept. 2011) ................................................................................... 11

*Lewis v. Tuscan Dairy Farms*,
25 F.3d 1138 (2d Cir. 1994) .............................................................................................. 9

*Madsen v. Women's Health Ctr.*,
512 U.S. 753 (1994) ............................................................................................................ 6

*Martin v. Curran*,
303 N.Y. 276 (1951) ................................................................................................... 11, 12

*Metro. Opera Ass'n v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*,
239 F.3d 172 (2d Cir. 2001) .............................................................................................. 6

*Near v. Minnesota ex rel. Olson*,
283 U.S. 697 (1931) ............................................................................................................ 6

*Nebraska Press Ass'n v. Stuart*,
427 U.S. 539 (1976) ............................................................................................................ 6

*Noe v. Loc. 983*,
213 A.D.3d 460, (1st Dept. 2023) ........................................................................... 11

*Organization for a Better Austin v. Keefe*,
402 U.S. 415 (1971) ..................................................................................................... 6

*Pacific Gas Elec. Co. v. Public Util. Comm'n*,
475 U.S. 1 (1986) ......................................................................................................... 5

*Palladino v. CNY Centro*,
23 N.Y.3d 140 (2014) ............................................................................................... 12

*Performing Arts Ctr. of Suffolk Cnty. v. Actor's Equity Ass'n*,
No. CV 20-2531 (JS)(AYS), 2022 WL 16755284 (E.D.N.Y. Aug. 25, 2022),
*report and recommendation adopted*, 2022 WL 4977112 (E.D.N.Y. Sept. 30, 2022) ............. 12

*Piniewski v. Panepinto*,
267 A.D.2d 1087 (4th Dept. 1999) ......................................................................... 11

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015) ..................................................................................................... 7

*Rosenberger v. Rector & Visitors of Univ. of Virginia*,
515 U.S. 819 (1995) ..................................................................................................... 7

*S.G. Cowen Sec. Corp. v. Messih*, No. 00 Civ. 3228, 2000 WL 633434
(S.D.N.Y. May 17, 2000), *aff'd*, 224 F.3d 79 (2d Cir. 2000) ............................... 16

*Spellacy v. Airline Pilots Ass'n*
156 F.3d 120 (2d Cir. 1998) ............................................................................... 10,11

*Steelworkers Local 1397*,
240 NLRB 848 (1979) ............................................................................................... 18

*Vaca v. Sipes*,
386 U.S. 171 (1967) ..................................................................................................... 9

*Vaughn v. Air Line Pilots Ass'n*,
604 F.3d 703 (2d Cir. 2010) ..................................................................................... 10

*Winter v. Natural Res. Def. Council*,
555 U.S. 7 (2008) ................................................................................................. 16, 17

*Yellow Cab, Inc.*,
210 NLRB 568 (1974) ............................................................................................... 18

**Statutes**

22 NYCRR Part 1200, Rule 1.0(f) ........................................................................... 14, 15

22 NYCRR Part 1200, Rule 1.7(a) .......................................................................... 14, 15

29 U.S.C. § 157 ........................................................................................................... 18

N.Y. Gen. Ass'ns Law § 13 ..................................................................................... 11, 12

**Other Authorities**

Ethical Consideration in Strikes by Unions,
   ABA Informal Op. 1325 (Mar. 31, 1975) .......................................................... 15

Lawyer as Union Member,
   NY Eth. Op. 578 (Dec. 4, 1986) ......................................................................... 15

**SUMMARY**

Defendant Association of Legal Aid Attorneys, Amalgamated Local Union 2325 of the UAW ("ALAA" or "Union") and individual Defendants Lisa Ohta, Bret J. Taylor, Jeremy Bunyaner, Emily C. Eaton, Martyna Kaznowski, Gillian R. Kress, Ioana Calin, and Puja Paul (collectively, "Defendants") submit this motion to dissolve a temporary restraining order (TRO) issued by the Supreme Court for the State of New York, Nassau County on November 17, 2023. The state court enjoined Defendants from putting a resolution ("Resolution") to a vote of the Union's full membership. The Resolution concerns the ongoing conflict in Israel/Palestine, as well as discrimination against workers' political speech.

The TRO is an unconstitutional viewpoint-based prior restraint on the free expression of the Union and its members. Moreover, Plaintiffs' underlying duty-of-fair-representation and breach-of-contract claims lack any basis in law. Plaintiffs have no likelihood of success on the merits and have not shown any concrete harm arising from the vote. The balance of equities and the public interest favor Defendants' free-speech rights over Plaintiffs' discomfort with the content of the Resolution.

For these reasons the TRO should be immediately dissolved.

**FACTUAL BACKGROUND[1]**

ALAA is a local labor union affiliated with the United Auto Workers (UAW), representing more than 2,700 attorneys and legal staff members -- including paralegals, social workers, investigators, interpreters, legal advocates, counselors, administrative employees, and

---

[1] All facts in this Section are taken from the Declaration of Lisa Ohta in Support of Defendants' Motion to Dissolve the Temporary Restraining Order, dated December 5, 2023 ("Ohta Decl.") and submitted with this Memorandum.

receptionists – at more than 20 non-profit employers in the New York City metropolitan area and beyond. The members at each employer form a "Chapter" within ALAA. ALAA is an unincorporated association within the meaning of the New York General Associations Law. Plaintiffs are attorneys and ALAA members employed by Nassau County Legal Aid Society (NCLAS).

ALAA By-Laws grant the membership the highest authority within the Union, with "authority to determine critical issues" including but not limited to ratifying contracts, striking, and election of union officers. Ohta Decl., Exh. B (hereinafter "Bylaws"), Art. IV(1), p. 2. The ALAA Joint Council is the highest authority after the membership and is composed of the Union's Officers as well as elected delegates[2] from each of the ALAA chapters. Bylaws, Art. VI, pp. 4-5.

Following the violent events of October 7, 2023 in Israel/Palestine, several ALAA Chapters drafted statements on the situation. These statements were not approved by ALAA and were issued by the chapters in their own name (*e.g.*, "The Bronx Defenders Union" or "The CAMBA Legal Services Union").

On or about November 6, 2023, a delegate from the CAMBA Legal Services (CLS) Chapter sent Union President Lisa Ohta an email notifying her that the membership of the CLS Chapter voted to bring to the ALAA Joint Council a motion to hold a vote of the full ALAA membership on whether to adopt the Resolution. Other Chapters, including Bronx Defenders, NYLAG, and the Office of Appellate Defenders, had similarly discussed bringing the motion to the Joint Council.

---

[2] Delegates are elected by the members of an ALAA chapter to serve as union representatives within that chapter. They are akin to shop stewards.

On or about November 13, 2023, ALAA Recording Secretary Emily Eaton sent an email to all ALAA members notifying them of a Joint Council Meeting to occur on November 14, 2023 at 6:00PM. Ohta Decl, Exh. C. The notice included a copy of the proposed Resolution. *See id.*, Exh. D.

Joint Council meetings are open to all ALAA members and members are permitted to participate in discussions. Only delegates to the Joint Council may vote on motions. At the November 14, 2023 meeting a delegate to the Joint Council from ALAA's Bronx Defenders Chapter moved to present the Resolution for a full membership vote on November 17, 2023. The motion was seconded and the members in attendance engaged in a robust discussion. Members spoke out in favor of and against the motion. There were more than 250 members in attendance at the November 14, 2023 Joint Council meeting, including at least one Joint Council delegate from Plaintiffs' NCLAS Chapter.

During the discussion a motion was made to end the debate. That motion required a two-thirds majority, which it received. The Joint Council then voted on the motion to place the Resolution before the full membership. That motion passed by a vote of 108 to 13, with 8 abstentions.

The Union used Election Runner, an electronic voting platform, to conduct the membership vote. ALAA uploaded membership data (names and email addresses) into the Election Runner system.

On November 16, 2023 at approximately 2:00PM, Plaintiffs filed the instant action and applied for the TRO. *See* Ohta Decl, Exh. E, "Summons and Verified Complaint" (hereinafter "Complaint"). Voting began as scheduled at 9:00AM on November 17, 2023 and was scheduled to conclude at 5:00PM. Election Runner sent an email to each member including voting

instructions and a link to the secret ballot. The Election Runner platform prevents ALAA officers, staff members, and union members from seeing how any individual member voted.

In the afternoon of November 17, 2023, following a brief conference call with counsel, the Honorable Felice J. Muraca granted the TRO. Judge Muraca did not make any findings in connection with granting the TRO. *See* Ohta Decl., Exh. F. He ordered the parties to present arguments on November 21, 2023 concerning whether the TRO should be extended. ALAA stopped the vote at approximately 4:30PM on November 17, 2023 after receiving notice of the TRO.

The parties submitted briefs and delivered oral argument in the Nassau County Supreme Court on November 21, 2023. Judge Muraca did not issue a ruling but left the TRO in place pending a decision. The judge did not make any findings or set an expiration date for the TRO.

Per the Bylaws, the Union's purposes include "advanc[ing] the economic, social, political, and cultural interests of our members;" "advocat[ing] through political outreach for the advancement of the interests of our membership, our clients and of poor and working people in general;" and "protect[ing] all members from illegal, improper, arbitrary or discriminatory treatment." Bylaws, Art. III, p. 1. The Bylaws do not prohibit Chapter representatives from proposing resolutions to the Joint Council, nor do they prohibit the Joint Council from sending resolutions to a full membership vote. The Union regularly expresses positions on matters of public concern that affect members and the indigent clients they represent, including criminal justice, health care, housing, human rights, and international affairs. *See* Ohta Decl. ¶ 21.

**ARGUMENT**

I.  **THE INJUNCTION DIRECTLY INFRINGES ON THE CONSTITUTIONAL SPEECH RIGHTS OF DEFENDANT UNION AND ITS MEMBERS**

    A.  **THE FIRST AMENDMENT GUARANTEES DEFENDANT UNION AND ITS MEMBERS THE RIGHT TO FREE EXPRESSION**

The First Amendment to the U.S. Constitution guarantees the individual members of Defendant Union the right to express themselves on issues of public concern, including the conflict in Israel/Palestine. Defendant ALAA enjoys the same right, as a labor organization. *Pacific Gas Elec. Co. v. Public Util. Comm'n*, 475 U.S. 1, 8 (1986).

    B.  **THE PROPOSED VOTE IS A QUINTESSENTIAL EXAMPLE OF PROTECTED EXPRESSION**

Plaintiffs take care in their Complaint to challenge only the vote, not the Resolution itself, presumably to avoid the obvious constitutional problems associated with demanding that a court enjoin a public statement before the statement occurs. However, this is a distinction without a difference. The vote itself represents an act of expression by ALAA members. In voting the members are expressing their view for or against the content of the Resolution. Enjoining the vote would restrict members' speech to the same degree as would enjoining public distribution of the Resolution itself.

The Bylaws specify that the Union's highest authority rests in its membership. Bylaws, Art. III, p. 1. The purpose of the vote is to determine the official position of the membership, and thus, the official position of the organization. The members cannot exercise their authority "to determine critical issues" (*see id.*, Art. IV(1), p. 2) and vote as a body unless Defendant Union takes action to effectuate that vote. ALAA cannot do so while the TRO stands.

### C. THE TRO IS INVALID PRIOR RESTRAINT

The doctrine of prior restraint generally bars courts from enjoining expression before it occurs. *See Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 712-713 (1931). "A prior restraint on expression comes…with a heavy presumption against its constitutional validity." *Metro. Opera Ass'n v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*, 239 F.3d 172, 176 (2d Cir. 2001) (citing *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971)) (internal quotations omitted). Prior restraint is "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). "When a prior restraint takes the form of a court-issued injunction, the risk of infringing on speech protected under the First Amendment increases." *Metro. Opera*, 239 F.3d at 176 (citing *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 764 (1994)).

No authority has found the vote or the Resolution itself to be unlawful. To the contrary, the First Amendment protects both these actions against state interference. The state court engaged in unconstitutional prior restraint when it issued a preemptive injunction against anticipated acts of expression. The TRO can and should be dissolved on this ground alone.

### D. THE TRO IS A CONTENT-BASED RESTRICTION ON SPEECH AND CANNOT SURVIVE STRICT SCRUTINY

Plaintiffs' objection is to the content of the Resolution. In a nutshell, Plaintiffs believe the Resolution is antisemitic and that this antisemitism will be automatically imputed to Plaintiffs as members of ALAA. All unlawful conduct and harms Plaintiffs allege flow from that premise.

Thus, the state court's action in granting the TRO represents a content-based restriction on speech. This conclusion is inescapable because Plaintiffs assert no claims independent of the content of the Resolution.

Content-based restrictions are subject to strict scrutiny. *Boos v. Barry*, 485 U.S. 312, 321 (1988). Plaintiffs must show that the restriction "is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Ibid.* Content-based restrictions are "presumptively unconstitutional." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

In fact, the TRO falls into the particularly disfavored category of viewpoint-based restriction. Plaintiffs asked the state court to enjoin the vote not simply because of the Resolution's topic – Israel/Palestine – but because of the specific viewpoint expressed in the Resolution. Viewpoint discrimination constitutes an "egregious form" of content-based restriction. *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995).

The government has no compelling interest in preventing a private organization from making a statement on Israel/Palestine. Nor does the government have a compelling interest in preventing the members of a private organization from voting to adopt or reject such a statement.

The government does have an interest in providing indigent defense, as Plaintiffs observed (*see* Complaint ¶ 7), but the TRO bears no relation to that interest. The TRO is not "necessary" to the provision of indigent defense, nor is it "narrowly tailored" to accomplish that goal.

Plaintiffs assert that publishing the Resolution will create "irreconcilable conflicts of interest and the appearance thereof" for all ALAA members, including Plaintiffs and other attorneys employed by NCLAS. Complaint ¶ 9. According to Plaintiffs, if the Union adopts the "venomously antisemitic" Resolution, its members will be unable to represent Jewish clients without at least disclosing the "conflict and ethical issues" arising from the attorney's membership in ALAA. *Id.* ¶ 40.

As discussed in Section IV, below, neither the vote nor the adoption of the Resolution would create actual or apparent conflicts of interest for ALAA members under the New York Rules of Professional Conduct. Muzzling a private labor organization for fear that its statements may be imputed to each and every member is a nonsensical, circuitous way to pursue conflict-free representation of indigent defendants. Under no interpretation could the TRO be construed as "necessary" or "narrowly tailored" to accomplish its alleged purpose.

## II.    DEFENDANT UNION FULFILLED ITS DUTY OF FAIR REPRESENTATION IN BRINGING THE RESOLUTION TO A VOTE

### A.    THE UNION FOLLOWED ITS BYLAWS AND AFFORDED ALL MEMBERS EQUAL OPPORTUNITY TO PARTICIPATE

As described above, Defendant Union acted consistently with the organization's Bylaws and democratic principles in bringing the Resolution to a vote. Officers did not act unilaterally or contrary to expressed desires of membership. A Chapter voted to have its delegates bring a motion to the Joint Council. The Joint Council respected the request and notified all members that it would be discussing the Resolution at an open meeting. After robust debate, in which all members (including Plaintiffs) were eligible to participate, the Joint Council, including at least one elected delegate from Plaintiffs' NCLAS Chapter, voted overwhelmingly to place the Resolution before the full membership for a vote. The Union then engaged a third-party contractor to run the secret-ballot election and notified members of their right to vote.

These actions comported with the Union's bylaws and reflected a thorough, good-faith attempt to provide maximum opportunity for democratic participation.

## B.     THE UNION DID NOT ACT ARBITRARILY, DISCRIMINATORILY, OR IN BAD FAITH

To establish a breach of the DFR a claimant must show that their union acted arbitrarily, discriminatorily, or in bad faith. *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). Union conduct that irritates or offends a member does not automatically breach the duty. Nor does conduct that may disadvantage one member, or privilege another, provided the union has not acted arbitrarily, discriminatorily, or in bad faith. *See Ford Motor Co. v. Huffman*, 345 U.S. 330 (1953).

Here Defendant ALAA acted carefully, not arbitrarily. It ensured that members had notice of the Joint Council meeting, had an opportunity to participate, and received representation (through their delegates) in the vote that led to the Resolution being placed before the full membership. The Union followed its Bylaws. The Resolution itself reflects the Union's purpose to "advance the economic, social, political, and cultural interests of our members," "advocate through political outreach for the advancement of the interests of our membership, our clients and of poor and working people in general," and "protect all members from illegal, improper, arbitrary or discriminatory treatment." *See* Bylaws, Art. III, p. 1. Defendants' conduct fell well within the "wide range of reasonableness" afforded to unions under federal labor law. *Ford Motor Co.*, 345 U.S. at 338.

Plaintiffs claim bad faith on Defendants' part but do not identify any misrepresentations, concealments, or any other traditional indicia of bad faith. *See, e.g.*, *Lewis v. Tuscan Dairy Farms*, 25 F.3d 1138, 1142 (2d Cir. 1994) (finding bad faith where union representative "willfully concealed" information from members).  A union does not act in bad faith simply by doing something that offends a member. The claimant must show some kind of fraud, misrepresentation, or other deliberate attempt to undermine the member's interests. *See Aguinaga v. Food and Commercial Workers*, 993 F.2d 1463, 1470 (10th Cir. 1993) ("Bad faith

requires a showing of fraud, or deceitful or dishonest action.") Plaintiffs do not allege and cannot show such conduct here.

Finally, Plaintiffs allege that Defendant Union discriminated against them. The Union did not discriminate against Plaintiffs or any other member with respect to the benefits of membership, representation rights, or terms and conditions of work. All members (including Plaintiffs) could participate in deliberations and had the opportunity to vote. That some members disagreed with the content of the Resolution does not mean that the Union discriminated against them within the meaning of DFR law.

By way of illustration: unions often endorse political candidates. A union that endorses one candidate has not "discriminated against" members who support a different candidate. The union has not treated those members differently in terms of membership rights, representation, or terms and conditions of work. It has merely reached a decision some members disagree with. This is a common occurrence in organizations endeavoring to represent a diverse membership.

## C.   PLAINTIFFS CANNOT MAKE OUT A DFR CLAIM BECAUSE THEY CANNOT SHOW IMMINENT, COGNIZABLE INJURY

If an employee shows that their union acted arbitrarily, discriminatorily, or in bad faith, they still must demonstrate that the union's conduct resulted in an actual loss in order to succeed on a DFR claim. *Vaughn v. Air Line Pilots Ass'n*, 604 F.3d 703, 709 (2d Cir. 2010).

Here, Plaintiffs do not allege any concrete economic injury, adverse impact on terms or conditions of work, or interference with membership rights. Without such injuries Plaintiffs cannot prevail on the DFR claim. As the Second Circuit explained in *Spellacy v. Airline Pilots Association*:

> Establishing that the union's actions were sufficiently arbitrary, discriminatory or in bad faith, is only the first step toward proving a fair representation claim.

Plaintiffs must then demonstrate a causal connection between the union's wrongful conduct <u>and their injuries</u>.

156 F.3d 120, 126 (2d Cir. 1998) (emphasis added) (internal quotations omitted).

Plaintiffs have not experienced any cognizable injury. All their alleged harms are speculative. *See* Section IV(B), below. Thus they cannot establish a DFR claim.

## III. PLAINTIFFS' BREACH-OF-CONTRACT CLAIM IS FORECLOSED UNDER NEW YORK GENERAL ASSOCIATIONS LAW, AND PLAINTIFFS CANNOT SATISFY THE ELEMENTS OF A CONTRACT BREACH

### A. PLAINTIFFS HAVE NOT PLEADED (AND CANNOT SHOW) AUTHORIZATION OR RATIFICATION BY EVERY MEMBER

Section 13 of the New York General Associations Law permits suits against unincorporated associations (through their officers) only where the plaintiff could "maintain such an action or special proceeding[] against all the associates." N.Y. Gen. Ass'ns Law § 13. Where plaintiffs bring contract or tort suits against unincorporated labor organizations in New York, state courts have consistently applied Section 13 to require proof that all individual members authorized or ratified the conduct at issue. *Martin v. Curran*, 303 N.Y. 276, 279-80 (1951); *Noe v. Loc. 983*, 213 A.D.3d 460, 461, (1st Dept. 2023); *Bidnick v. Grand Lodge of Free & Accepted Masons of State of New York*, 159 A.D.3d 787 (2d Dept. 2018); *Lahendro v. New York State United Tchrs. Ass'n*, 88 A.D.3d 1142 (3d Dept. 2011); *Piniewski v. Panepinto*, 267 A.D.2d 1087 (4th Dept. 1999).

Defendant ALAA is an unincorporated association. Plaintiffs do not allege, and cannot prove, that every ALAA member authorized or ratified the conduct underlying the alleged breach of contract. To the contrary, the results of the Joint Council vote show that at least 13 people voted against placing the Resolution before the membership. Those individuals did not authorize

- 11 -

or ratify the alleged breach. Members also spoke in opposition to the vote at the Joint Council meeting. The absence of unanimous authorization or ratification dooms Plaintiffs' state-law claim.

Section 13 does raise a high barrier to litigation against unincorporated associations under New York state law, prompting criticism over the years. Nevertheless, the New York Court of Appeals recently reaffirmed that the legislature clearly intended to erect this barrier, and state courts will continue to enforce it. *See Palladino v. CNY Centro*, 23 N.Y.3d 140 (2014). Federal courts interpreting New York law have followed suit. *See*, *e.g.*, *Performing Arts Ctr. of Suffolk Cnty. v. Actor's Equity Ass'n*, No. CV 20-2531 (JS)(AYS), 2022 WL 16755284, at *6 (E.D.N.Y. Aug. 25, 2022), *report and recommendation adopted*, 2022 WL 4977112 (E.D.N.Y. Sept. 30, 2022) ("Plaintiffs' state law tort claims against Equity are defective in light of the continued viability of the *Martin* rule").

## B.   PLAINTIFFS DO NOT IDENTIFY ANY ENFORCEABLE PROMISE OR LOSS

To make out a contract claim a member would have to show that the constitution contains an enforceable promise – *i.e.*, a concrete right residing in the member, such as the right to ratify a collective bargaining agreement, or a concrete obligation imposed upon the union, such as the duty to hold meetings with a particular frequency.

Defendant ALAA's constitution contains many guarantees of membership rights, but it does not guarantee any member the right to suppress or cancel a vote. Nor does it obligate (or even permit) the organization or its officers to cancel a vote that has been ordered by the democratically elected Joint Council.

- 12 -

Plaintiffs weakly invoke the Union Bylaws without citing any provision that forms an enforceable promise. The aspirational language cited in the Complaint – expressing the Union's goals of "improv[ing] the ... professional standing of members" and "ensur[ing] the provision of high-quality legal services" (*see* Complaint ¶ 23) -- is too vague to create an enforceable promise.

In addition, the speculative harm Plaintiffs allege is not sufficiently certain to establish a contract claim. Contract damages cannot depend on the possible, subjective reactions of third parties, *e.g.*, Jewish colleagues who "may take great offense. *See id.* ¶ 32.  A contract claimant must "demonstrate[] with certainty" that the "damages have been caused by the breach" and "the alleged loss must be capable of proof with reasonable certainty." *Kenford Co. v. Erie Cnty.*, 67 N.Y.2d 257, 261 (1986). "[T]he damages may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach, not remote or the <u>result of other intervening causes</u>." *Ibid* (emphasis added)*.*

## IV.    THE VOTE WOULD CREATE NO ACTUAL OR APPARENT CONFLICT OF INTEREST

Plaintiffs suggest that the Resolution would interfere with New York's ability to provide indigent defense by causing "irreconcilable conflicts of interest and the appearance thereof" for all ALAA members. Complaint ¶ 9. According to Plaintiffs, if ALAA adopts the Resolution this alleged conflict will arise "by mere virtue of the fact that any given NCLAS attorney is, or previously had been, a member of [ALAA]." *Id.* ¶ 40.

It is unclear how exactly this argument relates to Plaintiffs' causes of action for breach of DFR and breach of contract. To the extent Plaintiffs seek to cast this purported "interference with

representation" as a form of injury or loss to them, caused by Defendants' alleged breaches, their pronouncement of "irreconcilable conflict" has no foundation.

The New York Rules of Professional Conduct (NYRPC), codified at 22 NYCRR Part 1200, describe situations where a conflict of interest may arise. NYRPC Rule 1.7(a) provides: "a lawyer shall not represent a client if a reasonable lawyer would conclude that either: (1) the representation will involve the lawyer in representing differing interests; or (2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests." 22 NYCRR Part 1200.

These are objective tests. The NYRPC defines "differing interests" to include "every interest that will adversely affect either the judgment or the loyalty of a lawyer to a client, whether it be a conflicting, inconsistent, diverse, or other interest." 22 NYCRR Part 1200, Rule 1.0(f). "When used in the context of conflict of interest determinations, 'reasonable lawyer' denotes a lawyer acting from the perspective of a reasonably prudent and competent lawyer who is personally disinterested in commencing or continuing the representation." *Id.*, Rule 1.0(q).

Applying Rule 1.7(a)(1) – the "differing interests" prong – to this case, the NYRPC asks whether a "reasonable lawyer would conclude" (1) that the Resolution is antisemitic; (2) that any and every member of ALAA supports the Resolution; and (3) that an attorney's imputed support for the Resolution constitutes an "interest" that the attorney would be "representing" in the course of defending a Jewish client, such that the attorney would be "representing differing interests" within the meaning of the rule.

Defendants maintain that the Resolution is not antisemitic. However, this Court need not address or attempt to resolve that question because a reasonable lawyer would never presume

- 14 -

that each member of a democratic organization supports every statement the organization makes. For example, a reasonable lawyer would not assume that every attorney belonging to a particular political party supports every statement of that party or its leadership. A reasonable lawyer would not assume that membership in a bar association automatically implies endorsement of every statement that association makes on matters of public concern. If it were so, the NYRPC would require attorneys to give a disclaimer for each membership card in their wallet.

Rule 1.7(a)(1) also requires that the attorney be "representing differing interests" for a conflict to exist.  22 NYCRR Part 1200 (emphasis added). In other words, mere affiliation with an organization that might be construed as having interests "different" from the client is not enough. The attorney must "represent" those interests. In the instant case, a conflict exists only where a reasonable lawyer would conclude that a unionized attorney's loyalty to their union inevitably interferes with the client's representation, such that the attorney is "representing" the client's and the union's interests simultaneously.

A reasonable lawyer would not assume that every unionized attorney has hobbled judgment and divided loyalty. *See* 22 NYCRR Part 1200, Rule 1.0(f) (defining "differing interests"). Both the American Bar Association and the New York State Bar Association have recognized that attorneys may unionize and advocate for themselves as employees without automatically violating rules of professional ethics. *See* Lawyer as Union Member, NY Eth. Op. 578 (Dec. 4, 1986); Ethical Consideration in Strikes by Unions, ABA Informal Op. 1325 (Mar. 31, 1975).

Rule 1.7(a)(2) – the "lawyer's own interest" prong – provides no support for Plaintiffs' assertion either. The Resolution is not a "financial, business, or property" interest within the meaning of the Rule. Nor is the Resolution a "personal interest" of every ALAA member merely

because the membership voted on it. A reasonable lawyer would not conclude that the Resolution's existence creates "significant risk" of adverse impact on the professional judgment of ALAA attorneys.

## V.   NONE OF THE TRADITIONAL EQUITABLE FACTORS SUPPORT THE TRO

"On [a] motion to dissolve a temporary restraining order, ... the party that obtained the order bears the burden of justifying continued injunctive relief." *S.G. Cowen Sec. Corp. v. Messih*, No. 00 Civ. 3228, 2000 WL 633434, at *1 (S.D.N.Y. May 17, 2000), *aff'd*, 224 F.3d 79 (2d Cir. 2000). Thus, Plaintiffs must establish likelihood of success on the merits, danger of irreparable harm in the absence of injunctive relief, that the balance of equities tips in their favor, and that an injunction is in the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). Plaintiffs can satisfy none of these factors.

### A.   PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS

For all the reasons given above, Plaintiffs are extremely unlikely to succeed on the merits of their claims. Leaving aside that this Court cannot grant injunctive relief without unconstitutionally infringing the First Amendment rights of the Union and its members, Plaintiffs' DFR claim has no basis in federal labor law, and their breach-of-contract claim is both foreclosed by New York General Associations Law and lacking the necessary elements for a contract claim.

### B.   THE ALLEGED HARM DEPENDS ON SPECULATION ABOUT THE REACTION OF UNRELATED THIRD PARTIES

Boiled down, Plaintiffs' alleged harm is that their clients, other legal professionals, and the public may impute antisemitism to Plaintiffs if the Union adopts the Resolution. Per Plaintiffs this would then result in the personal targeting of every single union member, lifelong

blacklisting of all ALAA members from legal employment, and eventually the collapse of the state's indigent defense program. *See* Complaint ¶¶ 30-35, 37, 39-42. Plaintiffs absurdly describe such harms as "guaranteed" (*id.* ¶ 38), when in fact they strain credulity and depend entirely on speculation about how unrelated third parties will respond.

In support of their alarms Plaintiffs offer nothing but conclusory assertions, which they present as common knowledge that "anyone paying attention" would accept. *Id.* ¶ 35. For example, Plaintiffs claim that in "nearly each and every similar instance" where another group released a statement, the names, addresses, and private information of all group members was released to the public. *Id.* ¶ 39. Supposedly, "perusal of media reports" establishes this outcome as a "virtual guarantee." *Ibid*. Yet Plaintiffs fail to provide even a single example.

This is not to say that Plaintiffs have entirely invented these potential harms. There may be disgruntled people in the world who target others in the way Plaintiffs describe. The problem with Plaintiffs' argument is that the harms are simply too speculative to justify preliminary injunctive relief. Plaintiffs assume the reactions of unrelated third parties, with no concrete basis, then expect the courts to treat those hypothetical reactions as scientific certainties.

Plaintiffs allege harms that are, at best, possible. The Supreme Court in *Winter* expressly held that mere possibility of irreparable harm is insufficient. "[P]laintiffs seeking preliminary relief [must] demonstrate that irreparable injury is <u>likely</u> in the absence of an injunction." 555 U.S. at 22 (emphasis in the original); *see also JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir. 1990) (denying preliminary injunction based on "a remote and speculative possibility of future harm rather than the imminent likelihood of injury").

### C.   THE SPEECH RIGHTS OF THE UNION AND ITS MEMBERS FAR OUTWEIGH PLAINTIFFS' DESIRE TO AVOID ASSOCIATION WITH THE RESOLUTION

As set forth in Section I, above, the Union's members have a right to express themselves through voting. The members also have a right under the National Labor Relations Act to engage in concerted activity for mutual aid and protection. *See* 29 U.S.C. § 157. This is relevant because the Resolution does more than criticize the Israeli and U.S. governments. It explicitly condemns intimidation of workers for their political speech and pledges to organize in solidarity to prevent the Union's employers from procuring work lost due to retaliation against political speech. The Resolution also calls on the Union's parent organization, the UAW, to take similar steps. *See* Ohta Decl., Exh. D, pp. 3-4. These are activities encompassed by 29 U.S.C. § 157. *See Yellow Cab, Inc*., 210 NLRB 568, 569 (1974) *(*finding protected a union member's efforts to organize coworkers in support of another union's strike); *Steelworkers Local 1397*, 240 NLRB 848, 849 (1979) (recognizing "an employee's right to engage in intraunion activities in opposition to the incumbent leadership of his union").

The balance of equities decisively favors Defendants. The injunction attacks employees' constitutionally and statutorily enshrined rights, which injures them far more than permitting the vote would injure Plaintiffs. Plaintiffs want to stop the vote because they simply do not want to be associated with the Resolution. Such discomfort, however real and sincere, does not outweigh the constitutional and statutory rights of fellow members and their union.

### D.   THE PUBLIC INTEREST FAVORS FREE EXPRESSION, AND THERE IS NO PUBLIC INTEREST IN PROTECTING PLAINTIFFS FROM THE DEMOCRATIC DECISIONS OF THEIR OWN UNION

Robust debate on matters of public concern is in the public interest. The conflict in Israel/Palestine is occurring now. Per the authors of the Resolution, employer retaliation against

political speech is also happening now. Public expression on current events has little utility or force if it comes too late to exert an effect.

As discussed in Section IV, above, the Resolution poses no threat to New York's system of indigent defense. So Plaintiffs are left with no public interest to invoke, apart from their belief that the Resolution is bad and should not be disseminated. It is not for this Court to judge whether a public statement by a private membership organization is good or bad. That is for the members to decide. There is no public interest in shielding Plaintiffs from the democratic decisions of their own union.

## CONCLUSION

For the reasons set forth above, the TRO should be immediately dissolved.

Dated:     December 5, 2023
           New York, New York

                                         LEVY RATNER, P.C.


                              By:    Aleksandr L. Felstiner
                                     Attorneys for Defendants
                                     80 Eighth Avenue, 8th Floor
                                     New York, New York 10011-5126
                                     (212) 627-8100
                                     (212) 627-8182 (fax)
                                     afelstiner@levyratner.com

- 19 -